B 27 (Official Form 27) (12/09)

# UNITED STATES BANKRUPTCY COURT
Eastern District of Washington

In re Christian Barber
     *Debtor*

Case No. 13-02092
Chapter 7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1. Creditor's Name: FreedomRoad Financial

2. Amount of the debt subject to this reaffirmation agreement:
   $ 7,405.43 on the date of bankruptcy    $ 7,405.43 to be paid under reaffirmation agreement

3. Annual percentage rate of interest: 15.99 % prior to bankruptcy
   15.99 % under reaffirmation agreement ( ✓ Fixed Rate ___ Adjustable Rate)

4. Repayment terms (if fixed rate): $ 277.97 per month for _____ months

5. Collateral, if any, securing the debt: Current market value: $ 9,770.00
   Description: 2008 HARLEY DAVIDSON FXDB, VIN#1HD1GX4188K315199

6. Does the creditor assert that the debt is nondischargeable? ___ Yes ✓ No
   (If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

| Debtor's Schedule I and J Entries | Debtor's Income and Expenses as Stated on Reaffirmation Agreement |
|---|---|
| 7A. Total monthly income from Schedule I, line 16    $ 2139.58 | 7B. Monthly income from all sources after payroll deductions    $ 2139.58 |
| 8A. Total monthly expenses from Schedule J, line 18    $ 1821. | 8B. Monthly expenses    $ 1821. |
| 9A. Total monthly payments on reaffirmed debts not listed on Schedule J    $ 0 | 9B. Total monthly payments on reaffirmed debts not included in monthly expenses    $ 0 |
| | 10B. Net monthly income    $ 318.58 (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.) |

11. Explain with specificity any difference between the income amounts (7A and 7B):
_____
_____

12. Explain with specificity any difference between the expense amounts (8A and 8B):
_____
_____

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct.

_____　　　　　_____
Signature of Debtor (only required if　　　　Signature of Joint Debtor (if applicable, and only
line 11 or 12 is completed)　　　　　　　　required if line 11 or 12 is completed)

## Other Information

☐ Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt:
_____
_____

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
　　_X_Yes　　　　　_____No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
　　_X_Yes　　　　　_____No

### FILER'S CERTIFICATION

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

_____
Signature

Nichlas P. Spallas
Print/Type Name & Signer's Relation to Case

[ Reset ]　　　　　　　　　　　　　　　　　　　　[ Save As... ]　　[ Print ]

> Check one.
> ☐ Presumption of Undue Hardship
> ☒ No Presumption of Undue Hardship
> *See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
## Eastern District of Washington

In re  Christian Barber          ,          Case No. 13-02092
           *Debtor*
                                             Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** FreedomRoad Financial

☐ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: Promissory Note & Security Agreement
*For example, auto loan*

B. ***AMOUNT REAFFIRMED***:       $          7,405.43

   The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before _____, which is the date of the Disclosure Statement portion of this form (Part V).

   *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is  15.99 %.

   *See definition of "Annual Percentage Rate" in Part V, Section C below.*

   This is a *(check one)* ☒ Fixed rate          ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☐ $_____ per month for _____ months starting on_____.

☑ Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.
   $277.97/mo. until paid in full. Except as modified below, the terms of the attached Promissory Note and Security Agreement are hereby incorporated by reference. This reaffirmation agreement is void if the underlying security agreement is determined to be unenforceable or invalid by the Bankruptcy or other Court of competent jurisdiction

E. Describe the collateral, if any, securing the debt:

   Description:          2008 HARLEY FXDB......5199
   Current Market Value  $                9,770.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

   ☑ Yes. What was the purchase price for the collateral?   $       16,012.00

   ☐ No. What was the amount of the original loan?          $_____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $_____ | $_____ |
| Annual Percentage Rate | _____% | _____% |
| Monthly Payment | $_____ | $_____ |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.　DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

   Check one.　☑ Yes　　☐ No

B. Is the creditor a credit union?

   Check one.　☐ Yes　　☑ No

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

   a. Monthly income from all sources after payroll deductions
   (take-home pay plus any other income)                              $ 2139.58

   b. Monthly expenses (including all reaffirmed debts except
   this one)                                                          $ 1544.

   c. Amount available to pay this reaffirmed debt (subtract b. from a.)  $ 595.58

   d. Amount of monthly payment required for this reaffirmed debt     $ 277.97

   *If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:

    You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

   ☐ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

   Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

   ☐ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 6-11-13    Signature x _____ (Debtor)

Date _____   Signature _____ Joint Debtor, if any

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor  FreedomRoad Financial, c/o CRG,    1790 E. River Rd., Ste. 101, Tucson, AZ 85718
*Print Name*                                  *Address*

Nichlas P. Spallas    _____    6-12-13
*Print Name of Representative*   *Signature*       *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 6-11-13 Signature of Debtor's Attorney _____

Print Name of Debtor's Attorney  Michael A. Rembolt

[Reset]                        [Save As...]    [Print]



| RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT | Seller | Shumate Harley Davidson<br>6815 E TRENT AVE<br>SPOKANE, WA 99212<br>"We" and "us" mean the Seller above, its successors and assigns. | Buyer | BARBER, CHRISTIAN T.<br>930 N WASHINGTON #191<br>SPOKANE WA 99201<br>"You" and "your" mean each Buyer above, and guarantor, jointly and individually. |
|---|---|---|---|---|
| No.<br>Date 12/29/2007 ~~CM~~ 1-17-08 | | | | |

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the Motor Vehicle (Vehicle) and services described below. The Vehicle is sold in its present condition, together with the usual accessories and attachments.

| Description of Motor Vehicle Purchased | Year 2008<br>Make HD<br>Model FXDB | VIN 1HD1GX4188K315199<br>Lic. No./Year<br>☒ New ☐ Used | Other: |
|---|---|---|---|
| Description of Trade-In | | | |

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle, together called Property, and proceeds of the Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ __$13999.25__, plus finance charges accruing on the unpaid balance at the rate of __15.99%__ per year from today's date until maturity. Finance charges accrue on a __365__ day basis. After maturity, or after you default and we demand payment, we will earn finance charges on the unpaid balance at __15.99%__ % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ **ADDITIONAL FINANCE CHARGE:** You agree to pay an additional, nonrefundable finance charge of $ __N/A__ that will be ☐ paid in cash. ☐ added to the Cash Price. ☐ paid proportionally with each payment.

☐ **MINIMUM FINANCE CHARGE:** You agree to pay a minimum finance charge of $ __N/A__ if you pay this Contract in full before we have earned that much in finance charges.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. ☐ You agree to make deferred payments as part of the cash down payment as reflected in your Payment Schedule.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE<br>The total cost of your purchase on credit, including your down payment of $3,000.00 |
|---|---|---|---|---|
| 15.99 % | $ $9350.23 | $ $13999.25 | $ $23349.48 | $ $26,349.48 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 84 | $277.97 | Monthly beginning ~~1/28/2008~~ 2-16-08 |

**Security:** You are giving a security interest in the Motor Vehicle purchased.
**Late Charge:** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due.
**Prepayment:** If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Finance Charge.
☐ If you pay off this Contract early, you will not be entitled to a refund of part of the Additional Finance Charge.
**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

**Credit Life:** Insured __N/A__
☒ Single ☐ Joint Prem. $ __$0.00__ Term ____
Purpose ____
**Credit Disability:** Insured __N/A__
☐ Single ☐ Joint Prem. $ __$0.00__ Term ____
Purpose ____

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

### ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| Vehicle Price (incl. sales tax of $ $1,377.00) $ | $16,012.00 |
| Service Contract, Paid to: HARLEY DAVSD | $866.00 |
| Documentation Fee $ | $50.00 |
| Cash Price $ | $16,928.00 |
| Manufacturer's Rebate $ | $0.00 |
| Cash Down Payment $ | $3,000.00 |
| Deferred Down Payment $ | $0.00 |
| a. Total Cash/Rebate Down $ | $3000.00 |
| b. Trade-In Allowance $ | $0.00 |
| c. Less: Amount owing $ | $0.00 |
| Paid to: ____ | |
| d. Net Trade-In (b. minus c.) $ | $0.00 |
| e. Net Cash/Trade-In (a. plus d.) $ | $3,000.00 |
| Down Payment (e.; disclose as $0 if negative) $ | $3,000.00 |
| Unpaid Balance of Cash Price $ | $13,928.00 |
| Insurance Premiums* $ | $0.00 |
| Type(s) of Insurance: AMLIC | |

13-02092-PCW7   Doc 15   Filed 06/14/13   Entered 06/14/13 06:38:54   Pg 8 of 12

| | | |
|---|---|---|
| ☐ Single ☐ Joint  Prem. $ _____ $0.00 Term _____ | b. Trade-In Allowance $ _____ | $0.00 |
| Purpose _____ | c. Less: Amount owing $ _____ | $0.00 |
| | Paid to: _____ | |
| | d. Net Trade-In (b. minus c.) $ _____ | $0.00 |
| | e. Net Cash/Trade-In (a. plus d.) $ _____ | $3,000.00 |
| | Down Payment (e.; disclose as $0 if negative) $ _____ | $3,000.00 |
| | Unpaid Balance of Cash Price $ _____ | $13,928.00 |

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

Insurance Premiums* $ _____ $0.00
Type(s) of Insurance: _____ AHLIC
Term of Coverage: _____ Months

_____  _____
Buyer              d/o/b        Buyer              d/o/b

Paid to Public Officials - Filing Fees   $ _____ $0.00
Paid to Dept. of Licensing*              $ _____ $71.25
Amount to Finance line e. (if e. is negative)  $ _____ $0.00
Additional Finance Charge(s) Paid to Seller   $ _____ $0.00
To: _____ GAP _____                      $ _____ $0.00
To: _____                                 $ _____ $0.00
Total Other Charges                       $ _____ $71.25
Principal Balance                          $ _____ $13999.25
(Unpaid Balance of Cash Price Plus Total Other Charges)
Less: Prepaid Finance Charges             $ _____ $0.00
Amount Financed                            $ _____ $13999.25
Finance Charge Dollar Amount              $ _____ $9350.23
Time Balance - Princ. Bal. Plus Fin. Charge  $ _____ $23349.48
Amount Owed - payable in __84__ installments of $ _____ $277.97
each on __28 day of each month__ until paid in full.
*We may retain or receive a portion of this amount.

**PROPERTY INSURANCE:** You must insure the Property securing this Contract. YOU MAY PURCHASE OR PROVIDE THE INSURANCE THROUGH ANY INSURANCE COMPANY REASONABLY ACCEPTABLE TO US. The collision coverage deductible may not exceed $ _____ $0.00 . If you get insurance from or through us you will pay $ _____ $0.00 for _____ of coverage.

☐ $ _____ Deductible, Collision Coverage $ _____ $0.00
☐ $ _____ Deductible, Comprehensive Cov. $ _____ $0.00
☐ Fire-Theft and Combined Additional Coverage $ _____ $0.00
☐ _____ $ _____ $0.00

The insurance coverage ordered under the terms of this Contract does not include bodily injury liability, public liability or property damage liability unless such insurance is checked and indicated.

The above insurance shall be procured by ☐ Buyer ☐ Seller.

☐ **SERVICE CONTRACT:** With your purchase of the Vehicle, you agree to purchase a Service Contract to cover _____ 2008 HD     FXDB    1HD1GX4188K315199 _____ . This Service Contract will be in effect for _____ 0 Months _____ .

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.**

**NOTICE TO BUYER**
(a) Do not sign this Contract before you read it or if any spaces intended for the agreed terms, except as to unavailable information, are blank. (b) You are entitled to a copy of this Contract at the time you sign it. (c) You may at any time pay off the full unpaid balance due under this Contract, and in so doing you may receive a partial rebate of the Service Charge. (d) The service charge does not exceed _____ 19.39 % per annum computed monthly.

**ASSIGNMENT:** This Contract and Security Agreement is assigned to _____ FREEDOM ROAD FINANCIAL _____ , the Assignee, phone _____ 866-455-7623 This assignment is made ☐ under the terms of a separate agreement. ☐ under the terms of the ASSIGNMENT BY SELLER on page 2. ☐ This assignment is made with recourse.
Seller: By _____[signature]_____ Date _____12/29/2007_____ 1-17-08

**BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.**

Buyer: _____[signature]_____ 12/29/200
Signature                              Date 1-17-08

Signature _____[signature]_____
Seller: By _____ Date 12/29/07  1-17-08

13-02092-PCW7    Doc 15    Filed 06/14/13    Entered 06/14/13 06:38:54    Pg 9 of 12

## ADDITIONAL TERMS OF THIS CONTRACT AND SECURITY AGREEMENT

**GENERAL TERMS:** You have been given the opportunity to purchase the Vehicle and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Vehicle and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee, that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:
A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Vehicle.
B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.
C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.
E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent.
F. You will pay all taxes and assessments on the Property as they become due.
G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
A. You fail to perform any obligation that you have undertaken in this Contract.
B. We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including, without limitation, court costs, attorneys' fees (if this Contract is referred to an attorney that is not a salaried employee of ours), and fees for repossession, repair, storage and sale of the Property securing this Contract.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law and this Contract:
A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

**INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

---

**WARNING**

UNLESS YOU PROVIDE US WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY OUR LOAN AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPER COVERAGE ELSEWHERE.

YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR LOAN BALANCE. IF THE COST IS ADDED TO THE LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE.

THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY WASHINGTON'S MANDATORY LIABILITY INSURANCE LAWS.

---

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:
A. You must pay this Contract even if someone else has also signed it.
B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
C. We may release any security and you will still be obligated to pay this Contract.
D. If we give up any of our rights, it will not affect your duty to pay this Contract.
E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**WAIVER:** To the extent permitted by law, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due.

---

**THIRD PARTY AGREEMENT**

By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, including the WAIVER section above, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

You acknowledge receipt of a completed copy of this Contract.

_____
Signature                                                    Date

---

Property securing this Contract.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law and this Contract:
   A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
   B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
   C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
   D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.
   E. Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

due.

---

**THIRD PARTY AGREEMENT**

By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, including the WAIVER section above, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

_____
Signature                                            Date

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**IF YOU ARE BUYING A USED VEHICLE, THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

---

### PLEASE READ CAREFULLY! NOTICE OF ARBITRATION

If you agree to Arbitration you are giving up your right to go to court for claims and disputes arising from this Contract.
- You or we may choose to have any dispute between us decided by arbitration, and not by a court or by jury trial.
- If a dispute is arbitrated, you give up your right to join in as a class representative or class member on any class claim you may have against us, including any right to class arbitration.
- In arbitration, discovery and rights to appeal are generally more limited than in a judicial proceeding, and other rights that you and we would have in court may not be available.

**ARBITRATION AGREEMENT:** At your or our election, any claim or dispute in contract, tort, statute or otherwise between you and us or our employees, agents, successors or assigns that arises out of or relates to your credit application, this Contract or any resulting transaction or relationship, including those with third parties who do not sign this Contract, is to be decided by neutral, binding arbitration. The interpretation and scope of this arbitration agreement, including the arbitrability of a claim or dispute, it is also to be decided by neutral, binding arbitration.

If you or we choose to arbitrate our claim or dispute, you and we agree that no trial by jury or other judicial proceeding take place. In addition, you agree not to participate as a class representative or class member on any class claim that you may have against us, including class arbitration. You and we also agree that any claim or dispute is to be heard and decided by one arbitrator only, only on an individual basis, and not as a class action.

For the arbitration, you or we may choose one of the following arbitration organizations with its applicable rules: the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com), or JAMS, 235 Peachtree St., NE, 600 North Tower, Atlanta, GA 30303 (www.jamsadr.com). You can get a copy of the rules of these arbitration organizations by contacting the respective organization directly or by visiting their respective website.

The arbitration hearing will be carried out in the federal district where you reside, unless you and we agree otherwise. If arbitration begins, we would advance your filing, administration, service or case management fee, and your arbitrator or hearing fee all up to a total maximum of $1,500. Unless the arbitrator awards them to a party, each party is responsible for the fees of its attorney(s), experts, witnesses, and any other fees and costs of arbitration, including any amount we have advanced.

The arbitrator will be a lawyer or a former judge. In making an award, the arbitrator shall follow governing substantive law. The arbitrator has the authority to order specific performance, monetary damages, and punitive damages or to provide any relief allowed by applicable law. Other than the grounds for review under the Federal Arbitration Act, the arbitration award is final and binding on all parties. Any court having jurisdiction may enforce the arbitrator's award.

You and we retain rights to self-help remedies and to seek remedies in small claims court for claims or disputes within that court's jurisdiction, unless those claims or disputes are transferred, removed, or appealed to a different court. You and we retain rights to take measures that do not involve a court or arbitration. These measures include, but are not limited to, setting off against a deposit account, repossessing property, and foreclosing on property. You or we may obtain a temporary court order necessary to prevent harm until the arbitration is completed. By exercising any retained rights or by taking measures that do not involve a court or arbitration, neither you nor we waive the right to arbitrate any claim or dispute.

The Federal Arbitration Act (9 U.S.C. § 1 et. seq.) governs this arbitration agreement and not any state law concerning arbitration, including state law arbitration rules and procedures. This arbitration agreement survives any termination, payoff or transfer of this Contract. Except for the waivers of class action rights, if any part of this arbitration agreement is found to be unenforceable, the remainder is enforceable.

By signing this Contract you and we understand and agree to be bound by its terms, and expressly waive our rights to trial by jury and judicial process, and review, except as allowed by law.

**CAUTION:** It is important that you read this arbitration agreement thoroughly before you sign this Contract. By signing it, you are accepting that you have read and understand this arbitration agreement, and have received a copy of it. If you do not understand something in this arbitration agreement, do not sign this Contract; instead ask your lawyer.

---

### ASSIGNMENT BY SELLER

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract. (SEPARATE AGREEMENT: If this Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.)

you owe us.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

IF YOU ARE BUYING A USED VEHICLE, THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

## PLEASE READ CAREFULLY! NOTICE OF ARBITRATION

If you agree to Arbitration you are giving up your right to go to court for claims and disputes arising from this Contract.
- You or we may choose to have any dispute between us decided by arbitration, and not by a court or by jury trial.
- If a dispute is arbitrated, you give up your right to join in as a class representative or class member on any class claim you may have against us, including any right to class arbitration.
- In arbitration, discovery and rights to appeal are generally more limited than in a judicial proceeding, and other rights that you and we would have in court may not be available.

**ARBITRATION AGREEMENT:** At your or our election, any claim or dispute in contract, tort, statute or otherwise between you and us or our employees, agents, successors or assigns that arises out of or relates to your credit application, this Contract or any resulting transaction or relationship, including those with third parties who do not sign this Contract, is to be decided by neutral, binding arbitration. The interpretation and scope of this arbitration agreement, including the arbitrability of a claim or dispute, is also to be decided by neutral, binding arbitration.

If you or we choose to arbitrate our claim or dispute, you and we agree that no trial by jury or other judicial proceeding take place. In addition, you agree not to participate as a class representative or class member on any class claim that you may have against us, including class arbitration. You and we also agree that any claim or dispute is to be heard and decided by one arbitrator only, only on an individual basis, and not as a class action.

For the arbitration, you or we may choose one of the following arbitration organizations with its applicable rules: the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com), or JAMS, 235 Peachtree St., NE, 600 North Tower, Atlanta, GA 30303 (www.jamsadr.com). You can get a copy of the rules of these arbitration organizations by contacting the respective organization directly or by visiting their respective website.

The arbitration hearing will be carried out in the federal district where you reside, unless you and we agree otherwise. If arbitration begins, we would advance your filing, administration, service or case management fee, and your arbitrator or hearing fee all up to a total maximum of $1,500. Unless the arbitrator awards them to a party, each party is responsible for the fees of its attorney(s), experts, witnesses, and any other fees and costs of arbitration, including any amount we have advanced.

The arbitrator will be a lawyer or a former judge. In making an award, the arbitrator shall follow governing substantive law. The arbitrator has the authority to order specific performance, monetary damages, and punitive damages or to provide any relief allowed by applicable law. Other than the grounds for review under the Federal Arbitration Act, the arbitration award is final and binding on all parties. Any court having jurisdiction may enforce the arbitrator's award.

You and we retain rights to self-help remedies and to seek remedies in small claims court for claims or disputes within that court's jurisdiction, unless those claims or disputes are transferred, removed, or appealed to a different court. You and we retain rights to take measures that do not involve a court or arbitration. These measures include, but are not limited to, setting off against a deposit account, repossessing property, and foreclosing on property. You or we may obtain a temporary court order necessary to prevent harm until the arbitration is completed. By exercising any retained rights or by taking measures that do not involve a court or arbitration, neither you nor we waive the right to arbitrate any claim or dispute.

The Federal Arbitration Act (9 U.S.C. § 1 et. seq.) governs this arbitration agreement and not any state law concerning arbitration, including state law arbitration rules and procedures.

This arbitration agreement survives any termination, payoff or transfer of this Contract. Except for the waivers of class action rights, if any part of this arbitration agreement is found to be unenforceable, the remainder is enforceable.

By signing this Contract you and we understand and agree to be bound by its terms, and expressly waive our rights to trial by jury and judicial process, and review, except as allowed by law.

**CAUTION:** It is important that you read this arbitration agreement thoroughly before you sign this Contract. By signing it, you are accepting that you have read and understand this arbitration agreement, and have received a copy of it. If you do not understand something in this arbitration agreement, do not sign this Contract; instead ask your lawyer.

## ASSIGNMENT BY SELLER

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract. (SEPARATE AGREEMENT: If this Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.)

Seller warrants:
A. This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
B. The statements contained in this Contract are true and correct.
C. The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.
D. This sale was completed in accordance with all applicable federal and state laws and regulations.
E. This Contract is valid and enforceable in accordance with its terms.
F. The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.
G. This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
H. A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
I. The Vehicle has been delivered to the Buyer in good condition and has been accepted by Buyer.
J. Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of non-payment or non-performance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compound or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

UNLESS OTHERWISE INDICATED ON PAGE 1, THIS ASSIGNMENT IS WITHOUT RECOURSE.

WITH RECOURSE: If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

Experts © 1995, 1996 Bankers Systems, Inc., St. Cloud, MN     RSSIMVLFA-WA 10/12/2005

13-02092-PCW7    Doc 15    Filed 06/14/13    Entered 06/14/13 06:38:54    Pg 12 of 12